[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL MEMORANDUM OF DECISION RE: CHILD SUPPORT AND ALIMONY
I. The Weekly Net Income of the Parties
A. Plaintiff
Plaintiff's most recent financial affidavit, dated May 28, 1998 indicates she is receiving no income from employment. While testifying in court on that day she stated that her employment at the Whole Donut ended when she was asked to work from 7:00 p. m. until midnight, an impossibility with young children at home. CT Page 9179 While there her net weekly income from that part time job was $82.
From an inheritance from her parents invested in Resolute Trust plaintiff receives $93 gross weekly. Plaintiff paid no federal tax in 1996 on her limited income. Plaintiff further receives $466 monthly from a John Alden Annuity, also an inheritance. This is apparently a return of principal which will end in February, 1999.
Plaintiff's position is that in determining her weekly income for child support purposes the Resolute Trust income should be disregarded and only marital weekly income of $82 be considered. Defendant claims imputed wages, pension and annuities and all other income of whatever nature should be included when calculating plaintiff's weekly income.
This court determines not to include returns from the John Alden Annuity which are said to be a return of principal and which cease in a few months. On the other hand it holds that the return of income on inherited property must be included in the formula, as well as imputed income. See Family Law and Practice
Arnold H. Rutkin, General Editor Vol. 3 § 3704 [6].
Plaintiff's total net weekly income is thus determined to be $80 from Resolute Trust plus $82 imputed from past employment for a total weekly income of $162.
 B. Defendant
Defendant's current financial affidavit reflects a gross weekly income of $1,138 with a weekly net after the usual deduction of $748.
Stephen T. Hussey, an employer in the payroll department at Northeast Utilities, testified that defendant's average gross weekly pay for the first twenty weeks in 1998 was $1,142 and that his average net weekly income during that period was $837. The difference in net weekly income can be attributed largely to larger income tax withholdings indicated on defendant's financial affidavit.
The court holds that defendant's net weekly income for child support purposes is that reported to have been paid to him by his employer, i.e. $837. CT Page 9180
II. The Court Order Concerning Custody
Plaintiff mother has primary physical custody of daughter Erica who will be 18 years old September 3, 1998, son Matthew, who will be 17 on August 21, 1998 and son Timothy, who is 9 years old.
Defendant father was awarded primary physical custody of son Adam, who is 10 years old.
By way or further information, plaintiff takes Timothy and Matthew as exemptions for tax purposes, while defendant takes Erica and Adam. Erica is presently working part time at a local pastry shop, earns $30 weekly and plan to attend college this autumn.
III. The Dispute Over Adam
In brief, defendant claims that son Matthew, age 16, lives with his maternal grandparents, and that in accordance with the recent ruling in Unkelbach v. McNary, 244 Conn. 350 (1998) he should only owe plaintiff for two, rather than three children.
In his viewpoint defendant is partially correct. On this issue plaintiff testified as follows: "Matthew sleeps at my parents almost every night. Sometimes he's at our home on weekends." Defendant's situation with son is strikingly similar to that of plaintiff. Defendant works three different shifts at Northeast Utilities, each of equal duration. When he is on the second or early evening shift, Adam stays with his parents until he picks him up. When he is on the midnight shift, Adam is at his parent's home. Adam is also there every weekend.
The court distinguishes the facts in this case from Unkelbach
in that here no money was passed between the interested parties. Further, defendant's care of Adam is so like plaintiff's care of Matthew that more time should perhaps be spent in praise of the selfless generosity of grandparents rather than in dissecting the niceties of the child support guidelines.
IV The Consideration of the Manner of Distribution of theMarital Estate in Making an Award of Alimony
By Stipulation of the parties all marital assets were equally CT Page 9181 divided between them except that plaintiff wife retained a recent inheritance from her parents and defendant kept 50 acres of land deeded to him by his parents during the marriage. By this agreement plaintiff received property valued at $224,710 and defendant property valued at $185,550. Defendant proposes that the variation in the values of the shares of each of the parties be considered by the court when making an award of alimony to plaintiff.
Defendant's position on this issue is in keeping with that portion of Sec. 46b-82 which requires that when making an award of alimony the court shall consider "the award, if any, which the court may make pursuant to Section 46b-81." In extending consideration to this factor, the court observes that defendant's value of this acreage has varied considerably on his several financial affidavits filed during previous proceedings and during the current litigation plummeted upon the discovery that his aged parents had retained a life interest in said property.
In brief it is concluded that the variation, such as it is, in the values of the marital estates of the parties, is not, considering all of the evidence, a controlling or predominant factor when the court considers the question of alimony.
V. The Award of Child Support
Defendant is ordered to pay plaintiff child support in the amount of $241 weekly until September 3, 1998 at which time daughter Erica becomes eighteen years of age. Thereafter defendant's child support payment shall be reduced to $213 weekly.
VI. Alimony
Having considered all of the provisions of Sec. 46b-82
C.G.S., this court orders defendant to pay plaintiff as alimony the sum of $200 weekly for a period of 5 years and thereafter the sum of $100 weekly for a period of 5 years, at which time all payments of alimony shall cease and terminate. This award is non-modifiable as to term only, but shall sooner terminate upon the remarriage of the plaintiff, the death of either party, or plaintiff's cohabitation with an unrelated male within the meaning and intent of Sec. 46b-86 C.G.S.
In making this award the court is aware that while this is a CT Page 9182 marriage of twenty years duration, the parties, now in their early forties, are still relatively young and in good health. This award is intended to permit plaintiff to take several courses at a local community college in accordance with her expressed wishes, and to hone her existing but latest business skills. It hopefully also provides plaintiff with a financial cushion until such time as all the children have concluded their secondary schooling. See Wolfburg v. Wolfburg, 27 C.A. 396 (1992).
BY THE COURT
John D. Brennan Judge Trial Referee